```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
VERONICA MAHANGER MACPHEE           :
d/b/a MAHANGER CONSULTING           :
ASSOCIATES,                         :
                     Plaintiff,     :
                                    :      06-CV-7870(BSJ)
                                    :
                                    :           **Order**
                                    :
VERIZON COMMUNICATIONS INC. and     :
TELESECTOR RESOURCES GROUP, INC.    :
d/b/a TELESECTOR RESOURCES GROUP    :
and/or VERIZON SERVICES GROUP,      :
                                    :
                     Defendants.    :
------------------------------------x
```
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

In a complaint dated September 29, 2006 (the "Complaint"), Plaintiff Veronica Mahanger MacPhee, d/b/a Mahanger Consulting Associates ("Mahanger" or "Plaintiff"), alleges that Defendant Verizon Communications, Inc.[1] ("Verizon") refuses and has failed to pay her a performance bonus for her consulting work related to Verizon's "joint use" agreements. Verizon does not dispute that MacPhee performed consulting services for Verizon from

---

[1] Plaintiff, a New Jersey resident, sets forth in the Complaint upon information and belief that Verizon is a foreign corporation with its principal office in New York. Defendant Telesector Resources Group, Inc. ("Telesector" or, together with Verizon, "Defendants") is a Delaware corporation with its principal office in New York. In the Memorandum of Law in Support of Defendants' Partial Motion to Dismiss and in a Reply Affidavit, Defendants proffer that Verizon Communications, Inc. is a holding company that does not provide telecommunications services and does not contract with suppliers such as Plaintiff for services related to telephone equipment and that Defendant Telesector Resources Group typically enters into such contracts. Mem. of Law in Supp. of Defs.' Partial Mot. to Dismiss at 1 n.1. The Court will accept an Amended Pleading from Plaintiff that reflects any changes in how Plaintiff identifies various entities in light of the information proffered in the Verizon affidavit.

Spring 2002 through Spring 2004, but argues that there is no merit to Plaintiff's claim that an oral promise was made to her that she was entitled to a performance bonus. Presently before the Court is Defendants' partial motion to dismiss certain of the claims asserted by Plaintiff. For the reasons outlined herein, the motion is GRANTED in part and DENIED in part.

## BACKGROUND[2]

Since 1986, Mahanger has worked as one of a small number of experts in the field of "joint use" agreements. These agreements are entered into by power companies and telecommunications companies for rental attachment space on utility poles which are, for the most part, owned by the power companies. Mahanger is retained by telecommunications companies like Verizon as part of their effort to reduce the fees they pay under joint use agreements or to avoid new fees. Mahanger's services include reviewing existing agreements and developing strategies for their renegotiation; assisting the negotiation, drafting and consummation of new agreements; preparing expert opinions and analyses; and, providing assistance before industry regulatory bodies and agencies.

In the winter of 2002, Verizon solicited Mahanger to become a consultant for several of its subsidiaries' joint use

---

[2] This factual summary is drawn from the Complaint, the factual allegations of which are accepted as true for the purpose of deciding this motion.

2

agreements.[3] In response, on or about February 27, 2002, Mahanger sent a letter to Ed Dudley ("Dudley"), the Vice President of Infrastructure Provisioning of Verizon Communications,[4] that detailed a "Joint Use Proposal." The proposal laid out the "enormous" expense savings that could be realized by Verizon in relation to its joint use agreements. Plaintiff was subsequently retained by Verizon, in or about late March 2002, to perform analytical consulting services related to Verizon West's joint use agreements. At the same time, Dudley and Mahanger began negotiating a consulting agreement to describe the services that Mahanger had begun performing for the various subsidiaries, including the material terms of her compensation.

Mahanger alleges that on or about April 24, 2002, she and Dudley entered into an agreement setting forth all material terms of the consulting agreement. Mahanger was to be paid $150.00 per hour. Mahanger notes that this is "markedly lower" than her standard rate of $195.00 per hour, but that she agreed to the reduced rate in consideration of Dudley's representation and agreement that Verizon would pay her a 5% performance bonus

---

[3] The Complaint specifies that the particular subsidiaries comprise what is known in the industry as "Verizon West." Verizon notes that no such entity exists by this name. However, it appears to the Court that Plaintiff uses the term to denote the group of subsidiaries whose agreements she worked on rather than as a formal entity name.

[4] Verizon states in its submission to the Court that Dudley is an employee of Verizon North Inc., a Wisconsin corporation with its principal place of business in Indiana and a wholly-owned subsidiary of GTE Corporation, which is a subsidiary of Verizon Communications Inc.

based upon any savings realized by Verizon with respect to any consummated joint use agreement or other joint use matter for which she provided consulting services to Verizon. Mahanger and Dudley also agreed to a minimum retainer of $15,000.00 per month, even if she worked fewer than 100 hours in any monthly period. Mahanger prepared and remitted her first invoice to Verizon on or about May 3, 2002 in the amount of $15,000.00 for 100 hours of work performed through April 30, 2002. This amount was promptly paid by Verizon.

On or about May 16, 2002, after Dudley and Mahanger entered into the consulting agreement, Dudley sent Mahanger an email that attached three documents: 1) a proposed draft consulting agreement that Dudley said was drafted by the corporate sourcing group for Verizon in New York; 2) a statement regarding Mahanger's "unique qualifications" for the work to be performed; and, 3) a non-disclosure agreement. The proposed draft consulting agreement was drafted in the name of Telesector (the "Telesector Draft"). The Telesector Draft did not correspond with Mahanger and Dudley's prior agreement in that it provided for: 1) a flat hourly rate of $95.00 per hour if the total hours worked exceeded one hundred, and 2) a flat hourly rate of $195.00 per hour if the total hours worked was less than one hundred. The Telesector Draft did not include the

guaranteed minimum of $15,000.00 per month or the performance bonus.

Mahanger informed Dudley that the terms of the Telesector Draft were not those that they had previously agreed upon. In response, Dudley told Mahanger to revise the draft to reflect the terms Dudley had agreed to on Verizon's behalf. Accordingly, Mahanger deleted the material compensation terms included in the Telesector Draft and replaced them with the terms that she and Dudley had previously agreed to, including: a) Verizon would pay her $150.00 per hour with a minimum monthly retainer of $15,000.00, and b) Verizon would pay Mahanger a performance bonus of 5% of the savings realized with respect to any joint use agreement or other joint use matter for which she had provided consulting services. Mahanger made these and additional changes to the Telesector Draft and sent the revised 24-page document[5] to Dudley via email on or about May 21, 2002 and then by express mail on or about May 22, 2002.

Defendants never responded to the version of the agreement sent by Mahanger to Dudley in May 2002. However, Mahanger continued to perform services which Defendants continued to accept and pay for at the hourly rate and minimum retention initially agreed to and indicated in the revised document she

---

[5] Mahanger states that she agreed to a provision in the Telesector Draft that "[t]he agreement was to be governed in accordance with New York law, with all actions under the agreement to be brought in a court of competent jurisdiction in New York County."

5

sent to Dudley to correct the Telesector Draft.  To wit, Defendants paid Mahanger $15,000.00 per month over two years.  However, Defendants have refused to pay Mahanger the performance bonus outlined in the revised agreement.  According to the Complaint, the consulting work provided by Mahanger from the spring of 2002 until her agreement was terminated in June 2004 was "instrumental in saving Defendants well in excess of one hundred million dollars."  Mahanger alleges that just her work on successive disputes between Verizon and power companies under six joint use agreements allowed Defendants to save an estimated $105,636,000.00.  She asserts that she provided extensive consultation work on numerous other joint use agreements, the savings from which are not included in that amount.  Furthermore, Mahanger prepared a "White Paper" analysis regarding approximately 375 total agreements, the savings of which Plaintiff has not yet been able to calculate.

Based on the foregoing, Plaintiff asserts that she is owed a performance bonus of 5% of the amount in savings she achieved for Verizon, plus interest, attorneys fees, and punitive damages of no less than $50,000,000.00.  The Complaint sets forth the following claims: i) breach of contract; ii) breach of preliminary agreement; iii) breach of preliminary commitment; iv) fraud; v) fraudulent misrepresentation; vi) promissory estoppel; vii) equitable estoppel; viii) unjust enrichment; ix)

tortious interference with contract by Telesector; and x) breach of good faith and fair dealing. Defendants have moved to dismiss the claims for fraud and fraudulent misrepresentation, unjust enrichment, tortious interference with contract, and breach of good faith and fair dealing. For the reasons set forth below, Defendants' partial motion to dismiss is GRANTED in part and DENIED in part.

**DISCUSSION**

**I. Jurisdiction**

The Court has subject matter jurisdiction over this action based on the parties' diversity and alleged damages of more than $75,000. See U.S. Const. art. III, § 2; 28 U.S.C. § 1332(a)(1), (c)(1); St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 80 (2d Cir. 2005).

**II. Legal Standard**

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). A motion to dismiss may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46

(1957)).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Weisman v. Le Landais, 532 F.2d 308, 311 (2d Cir. 1976) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  "The level of specificity necessary to state a claim for Rule 12(b)(6) purposes is governed by the Federal Rules of Civil Procedure's notice pleading principles that call for no more than 'a short and plain statement' of a plaintiff's claim." Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001); see Fed. R. Civ. P. 8(a).

**III. Discussion**

In the partial motion to dismiss presently before the Court, Defendants argue that no oral promise was made to Mahanger by a representative of Verizon that would entitle her to the performance bonus she claims to be owed.  Defendants move to dismiss Plaintiff's tort claims for fraud and fraudulent misrepresentation on the grounds that Plaintiff relies on the same factual allegations for these claims as for her breach of contract claims: specifically, that Mahanger was not paid the 5% performance budget she asserts was promised to her.  Defendants further argue that Plaintiff's tortious interference with contract claim against Telesector must be dismissed because Telesector cannot, as a matter of law, interfere with its own or its affiliate's contract.  With the dismissal of Plaintiff's

torts claims, Defendants argue that Plaintiff's claim for punitive damages should be dismissed as well. With respect to Plaintiff's claim for unjust enrichment, Defendants argue that the claim is precluded by the existence of the parties' fully performed consulting agreement for hourly fees. Finally, plaintiffs have moved to dismiss the claim for breach of good faith and fair dealing as this claim is argued to be duplicative of the claim for breach of contract. Each of Defendants' arguments is addressed in turn below.

    i.   Fraud & Fraudulent Misrepresentation

Defendants move to dismiss Plaintiff's claims for fraud and fraudulent misrepresentation on the grounds that these claims are based on her allegation that Verizon failed to pay her a promised 5% performance bonus, and should therefore only be considered as part of her claim for breach of contract. To wit, in outlining her breach of contract claims, Mahanger states that Verizon breached the consulting agreement by "failing and refusing to pay her the agreed upon 5% performance bonus." Compl. ¶ 42. With respect to her fraud claims, the Complaint asserts that Verizon misrepresented that it would pay Mahanger a 5% performance bonus which it had no intention of paying. Id. ¶¶ 60-61, 67.

"It is well settled under New York law that 'a contract action cannot be converted to one for fraud merely by alleging

9

that the contracting party did not intend to meet its contractual obligations.'" Int'l Cabletel Inc. v. Le Groupe Videotron Ltee, 978 F. Supp. 483, 486-87 (S.D.N.Y. 1997)(quoting Rocanova v. Equitable Life Assurance Soc'y, 634 N.E.2d 940 (N.Y. 1994)(quotations and additional citations omitted)). Where, as here, a party to an agreement argues that the other party did not intend to be bound by its terms at the inception, such an allegation "is not to state 'fraud' in an actionable area, but to state a willingness to risk paying damages for breach of contract." Briefstein v. P.J. Rotondo Constr. Co., 8 A.D.2d 349, 351 (N.Y. App. Div. 1st Dep't 1959); see also Grappo v. Alitalia Linee Aeree Italiane, S.p.A., 56 F.3d 427, 434 (2d Cir. 1995)("A cause of action for fraud does not generally lie where the plaintiff alleges only that the defendant entered into a contract with no intention of performing it.").

Plaintiff argues that the fraud and breach of contract claims in this case are not redundant because she alleges more than Defendants' intention not to perform when the performance bonus was agreed to, but a "preconceived and ongoing scheme to defraud Plaintiff which continued throughout the course of performance of the cont[r]act until its termination by Verizon Communications." Pl.'s Mem. of Law in Opp. to Defs.' Partial Mot. to Dismiss at 8. Thus, she argues, this "scheme" constitutes a misrepresentation of material fact collateral to

10

the contract, which is sufficient to sustain a cause of action alleging fraud. See Channel Master Corp. v. Aluminium Ltd. Sales, 151 N.E.2d 833 (N.Y. 1958). However, while such a distinction is established under New York law, "[a] false statement which goes to the 'root' of an agreement is of course not a false statement which can be deemed 'collateral' to that agreement." Int'l Cabletel, 978 F. Supp. at 488 n.2. In the present case, it is clear on the face of the Complaint that the alleged promise to pay a performance bonus was not an "extraneous misrepresentation" that induced Mahanger to perform consulting services for Verizon, PI, Inc. v. Quality Prods., Inc., 907 F. Supp. 752, 761 (S.D.N.Y. 1995), but was a central term of what she believed to be the agreement between the parties. Thus, the Court finds that Plaintiff's claims for fraud and fraudulent misrepresentation are redundant of her breach of contract claims, and, accordingly, should be dismissed.

    ii. Tortious Interference with Contract

Under New York law, four elements must be shown to recover for tortious interference with contract: "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." Albert v. Loksen, 239

F.3d 256, 274 (2d Cir. 2001)(citations omitted). Defendants argue that Plaintiff cannot pursue such a claim as a matter of law, however, because Telesector cannot be found to have interfered with the contract of a corporate affiliate. Mem. of Law in Supp. of Defs.' Partial Mot. to Dismiss at 9. Furthermore, Defendants argue, Mahanger's claim fails because Telesector has an economic interest in the contract and the Complaint does not show that any interference was malicious or involved conduct that is illegal. Id. at 10 (citing Masefield AG v. Colonial Oil Indus., No. 05 Civ. 2231, 2006 WL 346178, at *15-16 (S.D.N.Y. Feb. 15, 2006)). Because the Court finds that Plaintiff alleged no facts that would tend to show that Telesector intentionally or improperly procured the breach of contract and that the claim should be dismissed on these grounds, it need not address whether Telesector is a "third party" with respect to the contract and whether this particular corporate entity could tortiously interfere with a contract entered into by another Verizon affiliate.

Even accepting the facts set forth in Plaintiff's Complaint as true and drawing all reasonable inferences in her favor, Plaintiff alleges in support of this claim only that Telesector sent Plaintiff the Telesector Draft, which included material terms related to her compensation that differed from the agreement she previously reached with Dudley. In support of her

claim, Plaintiff sets forth several potential explanations for the differences in material terms reflected in the Telesector draft. Specifically, the Complaint reads:

> The promulgation of the Telesector Draft evidences either: (1) ignorance of the existing consulting agreement negotiated and consummated between Mahanger and Dudley and already performed under by Verizon Communications; (2) a cynical and bad faith attempt to renegotiate the terms of the consulting agreement; (3) fraudulent inducement of Mahanger to perform and to continue performing her valuable services with no intention of paying her the agreed upon performance bonus; and/or (4) an attempt by Telesector to tortiously interfere with the existing consulting agreement.

Compl. ¶ 19. Plaintiff's allegations here are merely conclusory and lack any factual underpinnings, and, therefore need not be accepted by the Court on a motion to dismiss. See Masefield, 2006 U.S. Dist. LEXIS 5792, at * 13-14. Regardless of whether Plaintiff would ultimately be required to show that Telesector's conduct was malicious or illegal, or if she would merely need to show such conduct was "improper,"[6] Plaintiff has failed to

---

[6] To determine whether interference with a contract was justified, the New York Court of Appeals has adopted the approach that balances factors to determine whether the interference was justified under the circumstances of the particular case. See Jews for Jesus, Inc. v. Jewish Cmty. Relations Council, Inc., 968 F.2d 286, 292 (2d Cir. 1992). These factors include: the nature of the defendant's conduct, the defendant's motive, the interests of the plaintiff with which the defendant interferes, the interests the defendant seeks to advance, the social interests at stake, the proximity of the defendant's conduct to the interference, and the relations between the parties. Id. (citations omitted). Where a defendant has an economic interest in a contract, however, a plaintiff must prove more than these elements and must show that "the interference was either malicious or involved conduct rising to the level of criminality or fraud." Masefield, 2006 U.S. Dist. LEXIS 5792, at *15-16.

satisfy the even more basic threshold requirement of showing any sort of <u>interference</u> on Telesector's part to procure the contract's breach.  <u>See generally</u> <u>Jews for Jesus</u>, 968 F.2d at 289 (setting forth the course of conduct undertaken by defendants to cause a breach of contract between plaintiff and a catering facility, including threatening an economic boycott of the facility); <u>Foster v. Churchill</u>, 665 N.E.2d 153, 156 (N.Y. 1996) (finding elements of tortious interference with contract established, although overcome by defense of economic justification, where a report was prepared and presented that outlined reasons to terminate plaintiffs' employment for cause); <u>MDC Corp. v. John H. Harland Co.</u>, 228 F. Supp. 2d 387, 389 (S.D.N.Y. 2002) (denying motion to dismiss in case where a parent company directed a subsidiary to divert purchases under a requirements contract to other company affiliates).  With nothing more than an allegation that Telesector prepared a contract that contained material terms that differed from her agreement with Dudley, the Court finds that Plaintiff has failed to plead a claim for tortious interference with contract against Telesector.  Accordingly, this claim is dismissed.[7]

---

[7]   As Plaintiff concedes, with dismissal of the claim for tortious interference with contract as well as her claims for fraud and fraudulent misrepresentation, her demand for punitive damages cannot survive.

14

iii. Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must allege that: (1) the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). Plaintiff alleges in her Complaint that Verizon utilized her consulting services related to its "joint use" agreements to its benefit, that she accepted a decrease in her hourly rate based on the promise of a performance bonus, and that she is entitled to restitution of the value of the services she rendered. Defendants have moved to dismiss this claim on the grounds that Plaintiff may not recover in quasi-contract because a contract existed between the parties that covers the same subject matter. Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 14. However, federal courts have construed the lenient provisions for alternative pleading in Federal Rule of Civil Procedure 8(e)(2) to permit plaintiffs "to sue on a contract, and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim." Wright & Miller, 5 Federal Practice and Procedure: Civil 2d § 1283 (1990); Knudsen v. Quebecor Printing (U.S.A.), Inc., 792 F. Supp. 234, 237 (S.D.N.Y. 1992); see also Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir. 1996). "Courts generally dismiss claims for quantum meruit on the

pleadings only when it is clear from the face of the complaint that there exists an express contract that clearly controls." Knudsen, 792 F. Supp. at 237. At this stage in the litigation, the Court will permit Plaintiff to maintain her claim for unjust enrichment in the alternative to her claims based on the purported agreement regarding the performance bonus. Accordingly, Defendants' motion to dismiss this claim is denied.

    iv.   Breach of Good Faith & Fair Dealing

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." Fasolino Foods Co. v. Banca Nazionale Del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992) (citations and quotations omitted); see also Butvin v. DoubleClick, Inc., No. 99 Civ. 4727 (JFK), 2001 U.S. Dist. LEXIS 2318, at *28 (S.D.N.Y. 2001). New York courts have recognized a separate cause of action for breach of the covenant of good faith and fair dealing in cases involving efforts by one party to a contract to subvert the contract itself. Butvin, 2001 U.S. Dist. LEXIS 2318, at *28. "For a complaint to state a cause of action alleging breach of an implied covenant of good faith and fair dealing, the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce, 697 N.Y.S.2d

128, 130 (N.Y. App. Div. 2d Dep't 1999). In the present case, however, the Complaint makes clear that the breach alleged by Plaintiff relates to the terms of her agreement with Verizon regarding her compensation structure. In support of her good faith and fair dealing claim, Plaintiff makes no allegations separate and apart from Verizon's failure to pay the performance bonus that she asserts was promised in the agreement regarding her compensation structure. Accordingly, the Court finds that Plaintiff's claim for breach of the duty of good faith and fair dealing is duplicative of her breach of contract case, and, therefore, the good faith and fair dealing claim is dismissed.

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss the Complaint is GRANTED with respect to Plaintiff's claims for fraud, fraudulent misrepresentation, tortious interference with contract, and breach of good faith and fair dealing, and DENIED with respect to Plaintiff's claim for unjust enrichment.

**SO ORDERED:**

*Barbara S. Jones*
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated: New York, New York
January /4, 2008